IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 23, 2007

**STATE OF TENNESSEE v. EDGAR LEWIS RIES**

**Appeal as of Right from the Circuit Court for Marshall County**
**No. 16607  Robert Crigler, Judge**

---

**No. M2006-00814-CCA-R3-CD - Filed March 15, 2007**

---

A Marshall County jury convicted the Defendant, Edgar Lewis Ries, of attempted first degree murder and conspiracy to commit first degree murder.  The Defendant was sentenced to concurrent terms of twenty years for his convictions.  On appeal, he alleges there was insufficient evidence to support his convictions and that the trial court erred when it sentenced him.  Finding no error exists, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID H. WELLES and, THOMAS T. WOODALL, JJ., joined.

William C. Barnes, Jr., Columbia, Tennessee, for the Appellant, Edgar Lewis Ries.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Mike McCown, District Attorney General; Weakley E. Barnard and Brooke Grubb, Assistant District Attorneys General, for the Appellee, State of Tennessee.

**OPINION**
**I.  Facts**
**A. Guilt Phase**

This appeal arises from the Defendant's convictions for attempted first degree murder and conspiracy to commit first degree murder.  The following evidence was presented at the Defendant's trial:

David Lyle Morgan testified that he dated Lori Hill for three weeks in 2005, and he ended their relationship in March of 2005.  On April 1, 2005, Morgan heard someone coming through his back door and then heard Ms. Hill say, "Lyle are you home?"  Morgan turned on all of his outside lights and saw Ms. Hill outside.  She ran to a truck that he had never seen before.  Morgan then saw the Defendant, whom he had never seen before, inside his utility room and asked the Defendant what

he was doing. The Defendant asked Morgan, "Where is the party at?" Morgan told the Defendant there was no party, and the man asked to use Morgan's phone. Morgan told the Defendant that he did not have a phone and asked him to leave, which he did.

On April 3, 2005, Morgan got into his truck and saw the Defendant walking in Morgan's driveway. Morgan exited his truck and saw the Defendant's truck parked further down Morgan's driveway. The Defendant approached him and apologized for his earlier behavior when he went inside Morgan's home without permission. Morgan accepted the apology, the men shook hands, and the Defendant went back to his truck. Morgan got back inside his truck, and, in his truck's rear view mirror, he saw the Defendant walking back toward him and he rolled down his window. Next, the Defendant pointed a pistol at Morgan and pulled the trigger three or four times. Morgan attempted to escape and screamed, asking the Defendant not to kill him. The gun made a clicking noise but did not fire, and the Defendant continued to pull the trigger. Morgan was finally able to open his truck's door and escape. He ran into the woods and called 9-1-1 on his cellular phone. He heard the Defendant's truck leave his driveway. The police arrived fifteen minutes later, and Morgan came out of the woods to speak with police officers. After the police left, Morgan found two shells in his driveway.

Deputy Sean Sweeney testified that, on the day of the crime, he was dispatched to Morgan's residence. When he arrived, Morgan emerged from the woods and spoke with him. Morgan showed him where the crime occurred, described the Defendant's truck, and told him the Defendant's name. Deputy Sweeny radioed dispatch with a description of the Defendant's truck and then searched the surrounding area for the Defendant's truck. On cross-examination, Deputy Sweeny could not recall how Morgan learned the Defendant's name.

Captain William James Garner testified that he visited the crime scene on two occasions. After his second visit to the crime scene, Captain Garner retrieved the two shells that Morgan had found.

Officer Kevin Clark testified that he investigated this crime and identified the Defendant and Ms. Hill as suspects. Officer Clark spoke with the Defendant and asked him to come to the Sheriff's Department to discuss the shooting. The Defendant came to the police station and provided the following statement. Officer Clark read that statement to the jury, of which was the following:

> That is what she came to me for is to Help Her. That is what she talked about is How she was going to get the money to get Her car out of the shop and Have a ride under her but [sic]. All she talked about was How to take thes [sic] mans [sic] Life. And How we were going set Him up so she could get in his house and kill him for his money. She said lots of it because he deals in drugs. [sic] and gave them to her son and she wanted him dead. That is all I know and we went Back to the mans House on Sunday she wonted [sic] to see if he was home and we went up the drive and he was in the truck I told him I was sorry for the other night. We shoke [sic] hands and I walk away and I walk back around to his truck and pointed a gun at this

man and It not go off and I open the gun and the shells fell out and I went to my truck and got in and went home. He went down the hill in front of his house and I backed up and went down the driveway. [sic] Lori was in the back sett [sic] and when I started down the driveway she got in the front set [sic] and she said let me have the gun and I did and I started down the road and she said stop cannot [sic] go to jail again and I stopped she [sic] jumped out of the truck and went up into the woods. I then went home. I have not herd or seen her seens [sic] Sunday and the only time I every wont to see her is when I'm looking at her in the courtroom [sic] for the same charges that I am faceing myself. [sic]

Officer Clark continued to question the Defendant, and the Defendant acknowledged that he planned to rob Morgan with Ms. Hill. The Defendant told Officer Clark that he pulled the trigger one time. He said Ms. Hill discussed killing Morgan about six times, and Ms. Hill was supposed to kill Morgan, but on the day of the crime she told the Defendant to kill Morgan.

Captain Norman Dalton testified that he was present when the Defendant provided this statement, and the Defendant asserted that he did not know if the gun worked when he shot at Morgan.

Phillip Hunter Hill testified that Lori Hill is his mother and that she was dating the Defendant when this crime occurred but that his mother had also dated Morgan. Hill overheard his mother tell the Defendant that she knew of an individual that they could rob. The next day, Hill got into a truck with his mother and the Defendant. Hill asked them where they were going, and they told him to shut up. They drove to Morgan's house and parked in his driveway. The Defendant told Hill to lie down in the back seat. Hill continued to ask his mother what was happening and she told him to be quiet. Hill saw the Defendant walk toward Morgan's house, but he could not see the Defendant after he walked away. Hill heard Morgan yelling, so he looked up and saw Morgan with a cellular phone. The Defendant ran back to the truck and they all drove away. Further down the road, Ms. Hill told the Defendant to stop the truck, and she and Hill ran into the forest. The Defendant drove away in his truck. About thirty minutes later, Hill and his mother exited the woods and went to a house. He testified that his mother told the woman who lived there that they needed to use her phone. Eventually this woman gave them a ride to their friend Jennifer's house.

Francis Tindell testified that a mother and son knocked on her front door, and she let them use her cellular phone and phone book. The mother made several phone calls and asked Tindell for a ride, and Tindell took the woman and her son to another person's house. Tindell explained that later a law enforcement officer asked her to identify the woman who had come to her house. Tindell identified the woman and learned that her name was Lori Hill. Tommy Tindell testified that he drove a mother and son to their friend's house with his mother, Francis Tindell.

Terry Lee Kelly testified that he rode with the Defendant, Lori Hill, and Philip Hill in the Defendant's truck. They were all drinking, and Lori Hill asked Kelly if he had a gun for sale. They drove to Kelly's grandmother's house, and Kelly retrieved a gun. Kelly testified that, after they left

Kelly's grandmother's house, the Defendant fired the gun that Kelly had retrieved and discovered that this gun worked. The Defendant and Lori Hill gave Kelly a half gallon of liquor in return for his gun.

Based on this evidence the jury convicted the Defendant of attempted first degree murder and conspiracy to commit first degree murder.

### B. Sentencing Phase

The following evidence was presented at the Defendant's sentencing hearing: Beth Ladner, the Defendant's probation officer, testified that the Defendant had prior convictions for public intoxication, driving on a revoked license, and other minor traffic offenses. Ladner testified that the Defendant received a high school diploma and a certificate for operating heavy machinery. She described his work history. The Defendant worked for Premier Manufacturing as a high pressure sprayer, at Burger King, and at Papalardo Group Home as a care giver for mentally ill individuals. Various individuals testified on the Defendant's behalf. Teachers who taught the Defendant in high school explained that he was placed in the special education program due to his learning problems and limited intelligence, that he became confused easily, and that he was easily manipulated. Gene Ries, the Defendant's younger brother, also testified that the Defendant had various learning problems and was easily manipulated. Janet Tuckerman, the Defendant's mother, discussed the Defendant's mental and emotional difficulties. Tuckerman said that the Defendant's relationship with Lori Hill concerned her because Hill drank too much, abused pain pills, and stole money and a ring from the Defendant's brother. Tuckerman repeatedly told the Defendant that Hill would get him into trouble. Donald Simmons, the Defendant's supervisor at Premier Manufacturing, testified that the Defendant worshipped Lori Hill, constantly talked about her, and bought her a ring.

The State argued that the following enhancement factors applied to the Defendant's sentence: (1) the Defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; (2) the Defendant was a leader in the commission of an offense involving two or more criminal actors; (3) the Defendant possessed or employed a firearm, explosive device or other deadly weapon during the commission of the offense; and (4) the Defendant had no hesitation about committing a crime when the risk to human life was high. See Tenn. Code Ann. § 40-35-114 (1), (2), (9) & (10) (2006). The Defendant contended that these factors should not be used to enhance his sentence and that the trial court should consider the mitigating factor that the Defendant acted under duress or under the domination of another person, even though the duress or the domination of another person is not sufficient to constitute a defense to the crime.

The trial court found that the Defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range and that the Defendant possessed or employed a firearm, explosive device or other deadly weapon during the commission of the offense. However, the trial court gave very little weight to these enhancement factors. The trial court found that no mitigating factors applied to the Defendant's sentence and

-4-

chose not to enhance or mitigate the Defendant's sentence. The trial court sentenced the Defendant to twenty years for his attempted first degree murder conviction and to twenty years for his conspiracy to commit first degree murder charge and ordered these sentences to run concurrently.

## II. Analysis

The Defendant asserts that there was insufficient evidence for the jury to convict him of attempted first degree murder and that his sentence is excessive.

## A. Sufficiency of the Evidence

The Defendant contends that the evidence was insufficient to support his conviction for attempted first degree murder. Specifically, he alleges that the evidence is insufficient to show that he had the intention to kill. The State contends that the evidence is sufficient to support the Defendant's conviction for attempted first degree murder.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see Tenn. R. App. P. 13(e); State v. Goodwin, 143 S.W.3d 771, 775 (Tenn. 2004) (citing State v. Reid, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass,13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997); Liakas, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978); State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 405 S.W.2d 768, 771 (Tenn. 1966) (citing Carroll v. State, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. Goodwin, 143 S.W.3d at 775 (citing State v. Smith, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000).

First we note that the Defendant makes no argument challenging the conviction for conspiracy to commit first degree murder in his brief and has effectively waived that issue. Tenn. R. Crim. App. 10(b). In this case, the Defendant was also convicted of attempted first degree murder. Tennessee Code Annotated Section 39-12-101(a) states:

> A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:
>
> (1) Intentionally engages in action or causes a result that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be;
>
> (2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or
>
> (3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step towards the commission of the offense.

Tenn. Code Ann. § 39-12-101(a)(1)-(3) (2003). First degree murder is the premeditated and intentional killing of another. Tenn. Code Ann. § 39-13-202(a)(1) (2003). "Premeditation" is defined as "an act done after the exercise of reflection and judgment." Tenn. Code Ann. § 39-13-202(d) (2003). This is a question of fact for the jury to determine, and it can be inferred from a number of circumstances, including: "the use of a deadly weapon upon an unarmed victim; the particular cruelty of the killing; declarations by the defendant of an intent to kill; evidence of procurement of a weapon; preparations before the killing for concealment of the crime; and calmness immediately after the killing." State v. Bland, 958 S.W.2d 651, 660 (Tenn. 1997).

Viewing the evidence in the light most favorable to the State, the evidence showed that the Defendant was guilty of attempted first degree murder. The proof set out above indicates that the Defendant and Lori Hill had a "plan or design" to rob and murder Morgan. The record reflects that the Defendant and Hill discussed killing Morgan on six different occasions, obtained a weapon for the murder, and then drove to Morgan's home with the weapon. The Defendant acknowledged that

he apologized to Morgan and, after feigning a truce, walked away from Morgan and then came back to Morgan's truck, pointed a pistol at Morgan, and pulled the trigger. Thus, there was clear evidence upon which a rational jury could find premeditation. Additionally, pointing the pistol at Morgan and pulling the trigger constitutes a substantial step toward Morgan's murder. Therefore, this evidence is clearly sufficient for a jury to find the Defendant guilty of attempted first degree murder, and the Defendant is not entitled to relief on this issue.

### C. Sentencing

The Defendant contends that the trial court erred when it sentenced him. Specifically, he contends that he should be sentenced to the minimum punishment in his range for his convictions, that the trial court erred when it applied enhancement factors, and that the trial court failed to properly consider relevant mitigating factors. The State contends that the trial court properly sentenced the Defendant.

The Defendant argues that, after Blakely v. Washington, 542 U.S. 296 (2004), our state Legislature modified Tennessee Code Annotated section 40-35-210 and deleted the language mandating that Class A felonies begin at the midpoint of the applicable sentencing range. However, the offenses in this case were committed in April of 2005, prior to the June 7, 2005, effective date of the 2005 amendment. Our state Legislature provided specific direction regarding the applicability of the new amendment to offenses committed prior to the date of enactment:

> This act shall apply to sentencing for criminal offenses committed on or after the effective date of this act. Offenses committed prior thereto shall be governed by prior law, which shall apply in all respects. However, for defendants who are sentenced after the effective date of this fact for offenses committed on or after July 1, 1982, the defendant may elect to be sentenced under the provisions of this act by executing a waiver of such defendant's ex post facto protections. Upon executing such a waiver, all provisions of this act shall apply to the defendant.

Pub. Acts, Ch. 353, § 18. Thus, the amended code sections are inapplicable to the Defendant's appeal because the crimes occurred before the effective passage of the act, and no waiver was executed by the Defendant. Id.; see State v. Stepp, No. 9522, 2006 WL 3102353, at *3 n.1 (Tenn. Crim. App., at Knoxville, Nov. 2, 2006) *no Tenn. R. App. P. 11 application filed.*

When a defendant challenges the length, range or manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2003). This means that if the trial court made findings of facts which are adequately supported in the record and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, Tenn. Code Ann. § 40-35-103 (2003), we may not disturb the sentence even if a different result was preferred. State v. Ross, 49 S.W.3d 833, 847 (Tenn. 2001). The presumption does not apply to the legal conclusions reached by the trial

court in sentencing a defendant or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Dean, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994). In conducting a de novo review of a sentence, we must consider: (a) any evidence received at the trial and/or sentencing hearing; (b) the presentence report; (c) the principles of sentencing; (d) the arguments of counsel relative to sentencing alternatives; (e) the nature and characteristics of the offense; (f) any mitigating or statutory enhancement factors; (g) any statements made by the defendant on his or her own behalf; and (h) the defendant's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-210 (2003); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging a sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401(d), Sentencing Comm'n Cmts.

In the case under submission, we conclude that there is ample evidence that the trial court considered the sentencing principles and all relevant facts and circumstances. Therefore, we review its decision de novo with a presumption of correctness. The trial court sentenced the Defendant to twenty years for his attempted first degree murder conviction and to twenty years for his conspiracy to commit first degree murder conviction and ordered these sentences to run concurrently. A Class A felony carries a sentencing range of fifteen to twenty-five years. Tenn. Code Ann. § 40-35-112(a)(1) (2003). As applicable to this case, the presumptive sentence to be imposed by the trial court for a Class A felony is the midpoint of the sentence within the applicable range, absent the presence of enhancement and mitigating factors. Tenn. Code Ann. § 40-35-210(c). If the trial court finds enhancement factors but not mitigating factors, the court may set the sentence above the presumptive minimum sentence. Id. at (d). However, if both enhancement and mitigating factors are present, the court must start at the presumptive sentence, enhance as appropriate for enhancement factors, and then reduce the sentence as appropriate for applicable mitigating factors. Id. at (e).

The Defendant contends that the trial court erred when it failed to consider the mitigating factor that the Defendant acted under duress or under the domination of another person, even though the duress or domination of another person is not sufficient to constitute a defense to the crime. see Tenn. Code Ann. § 40-35-113(12). The trial court recognized that the Defendant "would not have committed this crime were it not for Lori [Hill], . . . [but that] [i]t is not the same thing to think that he did not have free will to say no." The court determined that the Defendant did not act under duress or under the domination of another person so as to justify the application of this mitigating factor. The Defendant argues that this mitigating factor should apply to his sentence because Lori Hill had an extremely strong effect on the Defendant, and she "master-minded" the crime. However, the record establishes that the Defendant went to Morgan's truck with a loaded weapon and attempted to fire the weapon while Hill remained in the Defendant's vehicle. Nothing in the record suggests that the Defendant acted under duress or domination. The Defendant is not entitled to relief on this issue.

The Defendant also contends that the trial court erred when it failed to consider that substantial grounds existed tending to excuse or justify the Defendant's criminal conduct, though

failing to establish a defense and that the defendant was suffering from a mental or physical condition that significantly reduced the defendant's culpability for the offense. See Tenn. Code Ann. § 40-35-113 (3) and (8). Neither the Defendant nor the trial court addressed these mitigating factors during the sentencing hearing. In our view, the evidence presented at the Defendant's sentencing hearing does not warrant the application of either mitigating factor to the Defendant's sentence. The Defendant contends that the record reflects that he possessed limited emotional and mental abilities. However, the record reflects that the Defendant received a certificate for operating heavy machinery and was employed as a care giver for mentally ill individuals. This evidence suggests that the Defendant is a competent adult and does not suffer from a mental or physical condition that reduces his culpability for these crimes. As previously discussed, the Defendant's relationship with Lori Hill does not excuse his participation in the crime or justify his conduct. We conclude that the trial court did not err when it did not apply these mitigating factors to the Defendant's sentences. The Defendant is not entitled to relief on this issue.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the judgments of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE